FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 01, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TASHA L.,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

No. 1:18-CV-03047-JTR

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF

Nos. 14, 15. Attorney D. James Tree represents Tasha L. (Plaintiff); Special

Assistant United States Attorney Leisa Wolf represents the Commissioner of

Social Security (Defendant). The Parties have consented to proceed before a

magistrate judge. ECF No. 7. After reviewing the administrative record and briefs

filed by the parties, the Court **DENIES** Plaintiff's motion for summary judgment

and **GRANTS** Defendant's motion for summary judgment.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on

June 23, 2014, Tr. 118, alleging disability since June 1, 2014, Tr. 215, due to

migraines, depression, anxiety, asthma, insomnia, stomach problems, and

ORDER GRANTING DEFENDANT'S MOTION - 1

posttraumatic stress disorder.[1]  Tr. 239.  The application was denied initially and upon reconsideration.  Tr. 144-52, 156-61.  Administrative Law Judge (ALJ) Keith J. Allred held a hearing on November 2, 2016 and heard testimony from Plaintiff and vocational expert Roni Lenore.  Tr. 69-90.  The ALJ issued an unfavorable decision on January 5, 2017.  Tr. 18-28.  The Appeals Council denied review on January 26, 2018.  Tr. 1-5.  The ALJ's January 5, 2017 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c).  Plaintiff initiated this action for judicial review on March 30, 2018.  ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 27 years old at the date of application.  Tr. 215.  The highest grade Plaintiff completed was the eighth.  Tr. 240, 313.  Her reported work history includes customer service jobs in food service, retail, and crowd management.  Tr. 76, 240.  When applying for benefits Plaintiff reported that she stopped working on October 31, 2011 because of her conditions.  Tr. 239.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is

---

[1]Plaintiff had a prior application for benefits that was denied following an ALJ hearing, and the Appeal Council denied review on March 19, 2014.  Tr. 91-117.

not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On January 5, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from June 23, 2014 through the date of the decision. He found that the presumption of continuing non-disability created by the prior unfavorable ALJ decision did not apply to the current application. Tr. 18.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 23, 2014, the date of application. Tr. 20.

At step two, the ALJ determined that Plaintiff had the following severe impairments: affective disorder and anxiety disorder. Tr. 20-21.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 21.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of work at all exertional levels with the following nonexertional limitations:

> she can perform the basic mental demands of competitive, remunerative unskilled work, including the ability to understand, carry out, and remember simple instructions. She can respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting. She requires work that involves only occasional interaction with the general public and no more than frequent interaction with supervisors and coworkers.

Tr. 24. The ALJ found Plaintiff had no past relevant work. Tr. 26.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of industrial cleaner, hand packager, cleaner housekeeping, and packing line worker. Tr. 27. The ALJ

concluded Plaintiff was not under a disability within the meaning of the Social Security Act from June 23, 2014, through the date of the ALJ's decision. Tr. 28.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to find Plaintiff's impairments of obesity and migraines as medically determinable and severe at step two, (2) failing to properly weigh the opinion of Manuel Gomes, Ph.D., (3) failing to properly weigh the evidence provided by Plaintiff's mother, and (4) failing to properly weigh Plaintiff's symptom statements.

## DISCUSSION[2]

### 1.    Step Two

Plaintiff challenges the ALJ's step two determination by arguing that the ALJ erred by (1) failing to find Plaintiff's obesity a medically determinable impairment and (2) failing to find Plaintiff's migraines severe. ECF No. 5-10.

At step two of the sequential process, the ALJ must determine whether a claimant suffers from a "severe" impairment. 20 C.F.R. § 416.920(c). To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs,

---

[2]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

symptoms, and laboratory findings. 20 C.F.R. § 416.921.[3] The claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. *Id.* "[O]nce a claimant has shown that [she] suffers from a medically determinable impairment, [she] next has the burden of proving that these impairments and their symptoms affect [her] ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). If the claimant fulfills this burden, the ALJ must find the impairment "severe." *Id.*

Plaintiff failed to provide any medical evidence in this case. The record contains seven exhibits. The first is a response to Social Security's request for records made to Central Washington Comprehensive Mental Health dated July 23, 2014 stating that the facility had no records for Plaintiff. Tr. 308. The second is a statement from Diana Cook, Ph.D. that Plaintiff failed to attend a prearranged consultative examination. Tr. 309. The third is a similar statement from William Drenguis, M.D., that Plaintiff failed to attend the prearranged consultative examination. Tr. 310. The fourth is a physiological consultative examination completed by Manuel Gomes, Ph.D. Tr. 311-19. The fifth is a statement from Mary Pellicer, M.D., that Plaintiff failed to attend a prearranged consultative examination. Tr. 320. The sixth is a physical consultative examination completed by Dr. Pellicer. Tr. 321-29. The seventh exhibit is a response to Social Security's request for records from Yakima Neighborhood Health Services stating that Plaintiff was not a patient at their facility. Tr. 330-33. Plaintiff testified that she had health insurance at the time of the hearing and had received treatment for conditions other than those she alleged on her application. Tr. 84.
///

---

[3]Prior to March 17, 2017, these requirements were set forth in 20 C.F.R. §416.908, 416.928 (2016).

**A.     Obesity**

The ALJ's decision is silent regarding the impairment of obesity.  Tr. 18-28.
Plaintiff argues that the medical evidence establishes obesity as a medically
determinable impairment and the ALJ's failure to consider it at step two and in
forming the residual functional capacity determination was harmful error.  ECF
No. 14 at 5-8.

The only height and weight measurements in the file show Plaintiff to be
five feet, one and a half inches tall and 193 pounds.  Tr. 323.  Dr. Pellicer
described her as "over weight."  *Id*.  Additionally, Dr. Gomes diagnosed her as
"overweight," but did not measure her height and weight.  Tr.  316.  The record is
sufficient to establish the impairment of obesity as medically determinable under
20 C.F.R. § 416.921 based on the height and weight measurements from Dr.
Pellicer.  *See* 20 C.F.R. § 416.902(l) (defining "sign" as anatomical, physiological,
or psychological abnormalities that can be observed, apart from a claimant's
statements and requiring that they be shown by medically acceptable clinical
diagnostic techniques).

The ALJ's failure to list obesity as a medically determinable impairment at
step two was an error.  However, it was harmless because the Plaintiff failed to
allege any functional limitations resulting from her obesity.  *Burch v. Barnhart*,
400 F.3d 676, 684 (9th Cir. 2005) (The Ninth Circuit found no reversible error in
the ALJ's [residual functional capacity] determination when there was no evidence
in the record of any functional limitations due to obesity that the ALJ failed to
consider.).  While Plaintiff hypothesized about potential functional limitations, she
could not point to any specific limitation established in the record.  *See* ECF No.
14 at 7-8 (asserting that a person with severe affective and anxiety disorders and
obesity "may have reductions in mental clarity that affect her ability to respond
appropriately to supervision, deal with changes in the workplace, remain on-task,
or complete her work that are not related in the current [residual functional

capacity].").

**B.    Migraines**

Plaintiff asserts that the ALJ erred by finding Plaintiff's migraines to be non-severe.  ECF No. 14 at 8-10.

The ALJ acknowledged that Plaintiff had complained of migraines, but stated "I find she has no severe physical impairment.  There are simply no treatment records to substantiate her complaints.  Furthermore, despite her complaints of having migraines on a weekly basis, she was not on any treatment or prophylaxis."  Tr. 21.  The regulations specifically state that a claimant's statements regarding the existence of an impairment is not sufficient to establish the existence of an impairment, let alone that an impairment is severe.  20 C.F.R. § 416.921.  The only evidence in the record of migraines, is Plaintiff's report of migraines.  Tr. 311-12 ("She reports having migraines starting when she was 14 years old but has been worse since 2006-2007 and she usually gets two to three migraines a week, sometimes more."),  Tr. 321 ("Claimant says that in 2006 she started having problems with migraines. . . She now gets migraines 2-3 times a week and they last all day.").

Plaintiff argues that the lack of evidence should not be held against her since she did not have the financial means to obtain treatment.  ECF No. 14 at 9-10.  The Ninth Circuit has found that a claimant cannot be denied benefits on the basis of not obtaining treatment she cannot afford, *Gamble v. Chater*, 68 F.3d 319, 321 (9ᵗʰ Cir. 1995); however, the inability to afford treatment cannot negate Plaintiff's burden of proof, *Tackett*, 180 F.3d at 1098-99 (In steps one through four, the burden of proof rests upon the claimant.).  The record demonstrates that Plaintiff sought treatment for migraines at some point prior to her application for benefits.  Tr. 321 ("She was [on] Tompamax for a while and used Imitrex.  The Topamax worked well to prevent he migraines."); Tr. 312 ("She is no longer able to take Topamax so she tries to treat herself with Excedrin migraine headache because she

cannot afford hospital bills."); Tr. 97 (The prior ALJ's decision shows that Plaintiff sought treatment for migraines.). Plaintiff failed to provide the evidence required to establish the impairment and its severity. Therefore, the Court will not disturb the ALJ's step two determination.

**2.      Manuel Gomes, Ph.D.**

Plaintiff argues that the ALJ failed to properly consider and weigh the medical opinion expressed by examining physician Dr. Gomes. ECF No. 14 at 10-14.

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Dr. Gomes completed a consultative examination of Plaintiff on September 29, 2014. Tr. 311-18. He listed her diagnoses as other specified trauma and stress related disorder, generalized anxiety disorder, unspecified sleep-wake disorder, migraine, moderate major depressive disorder, unspecified attention deficit/hyperactivity disorder by history, academic/educational problem, insufficient social insurance or welfare support, overweight, and asthma. Tr. 316. He provided a detailed medical source statement in which he found Plaintiff to have moderate impairments in the following abilities: (1) to perform detailed and complex tasks; (2) to interact with coworkers and the public; (3) to perform work

activities on a consistent basis without special or additional instruction; (4) to maintain regular attendance in the workplace; (5) to complete a normal workday/workweek without interruptions from a psychiatric condition; and (6) to deal with usual stress encountered in the workplace. Tr. 317-18.

The ALJ assigned only some weight to the opinion finding that the mild to moderate limitations were "generally consistent with [Dr. Gomes'] examination and the other evidence." Tr. 26. The ALJ specifically addressed the issue of attendance by stating that, "[w]hile Dr. Gomes opined that the claimant had moderate impairment for performing activities on a consistent basis, maintaining attendance, and completing a normal workday/workweek without interruptions, I do not find that these would prevent the claimant from engaging in substantial gainful activity at the simple unskilled level." *Id*. The ALJ gave three reasons for rejecting the attendance portion of the opinion: (1) Plaintiff did not require redirection despite admitting to being distracted by the football game on her phone during the exam, (2) Plaintiff's mood and affect were unremarkable in the two examinations in the record, and (3) there was no treatment for mental health impairments in the record despite Plaintiff's allegations of mental health symptoms. *Id*.

Dr. Gomes is an examining physician which is contradicted by the opinions of the Agency reviewers. *See* Tr. 126, 138 (John F. Robinson, Ph.D. and Michael L. Brown, Ph.D. opining no significant limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.). Therefore, the ALJ was only required to provide specific and legitimate reasons for rejecting the opinion. *Lester*, 81 F.3d at 830-31.

The ALJ's first reason for rejecting the opinion, that Plaintiff did not require redirection, is specific and legitimate. The ALJ found that Plaintiff did not require redirection during the evaluation despite admitting that she was preoccupied by

following the football game on her phone. Tr. 26. An ALJ may cite internal inconsistencies in evaluating a physician's report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Gomes found that Plaintiff was able to follow a simple three-step command, and was able to spell the word HOUSE both forward and backwards. Tr. 315. Plaintiff was able to complete these concentration portions of the evaluation while "She was fiddling with her mobile phone throughout her evaluation, which she acknowledged at the end was because she was following the New England Patriots football game on her phone." Tr. 314. Despite the distraction of the phone, Dr. Gomes did not report that he had to remind her to stay on task or draw her back into the topic of conversation. Plaintiff argues that Dr. Gomes' observation that Plaintiff was preoccupied with a football game rather than the evaluation supports his finding that she had social limitations. ECF No. 14 at 13. However, the ALJ is not rejecting Dr. Gomes' opinion of Plaintiff's social limitations, but rather the opinion regarding her ability to maintain concentration and attendance.

The ALJ's second reason for rejecting the opinion, that it was inconsistent with the two evaluations in the record, is specific and legitimate. Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions. *Batson*, 359 F.3d at 1195. Under the section for mood/affect, Dr. Gomes stated "She described her current mood as 'fine, I guess. I don't know.' Her mood appeared to be congruent. She appeared to be distracted, which apparently was because she was attending to her football game while answering questions from her evaluation. She appeared to be of average IQ range." Tr. 314. On October 14, 2014, Dr. Pellicer found she had a normal mood and affect. Tr. 323. The ALJ found that these normal observations were inconsistent with the opined limitation in performing activities on a consistent basis, maintaining attendance, and completing a normal workday/workweek without interruptions. Tr. 26. Here, the ALJ's determination is supported by

substantial evidence and meets the specific and legitimate standard.

The ALJ's third reason for rejecting the opinion, that Plaintiff failed to seek treatment, is specific and legitimate. The ALJ found that the lack of treatment in the record suggests that Plaintiff's symptoms were stable and/or were not limiting her to the extent that she claimed. Tr. 26. The administrative record contains no treatment records. There is evidence that the agency attempted to gather records, but all responses indicated that there were no records for the period requested. Tr. 308, 330. In addition, before attending the September 2014 psychological evaluation with Dr. Gomes, Plaintiff failed to show up for a previously schedule evaluation with Dr. Cook. Likewise, prior to the October 2014 physical evaluation by Dr. Pellicer, Plaintiff failed to show up for two previously scheduled evaluations with Dr. Drenguis and Dr. Pellicer. Plaintiff argues that the ALJ cannot rely on the lack of treatment because Plaintiff did not have the economic means to seek treatment. ECF N. 14 at 13. Plaintiff testified at her hearing that she had medical insurance and had sought treatment for conditions that were not alleged on her application. Tr. 84 (stating that she had medical insurance and had sought care for UTIs). Considering Plaintiff was capable of seeking treatment for physical impairments that caused her discomfort, the ALJ's conclusion that her failure to seek treatment demonstrated a lack of severity is supported by substantial evidence. Furthermore, Plaintiff's inability to afford treatment does not negate her burden of proof at steps one through four. *Tackett*, 180 F.3d at 1098-99 (In steps one through four, the burden of proof rests upon the claimant.). The Court will not disturb the ALJ's treatment of Dr. Gomes' opinion.

**3.    Plaintiff's Mother**

Plaintiff's mother completed a Function Report in August of 2014. Tr. 262-69. The ALJ reviewed the report and gave it "little weight," for two reasons: (1) her allegations mirrored Plaintiff's allegations and (2) her report was inconsistent with Plaintiff's report to the consultative examiner. Tr. 25.

Lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). An ALJ must give "germane" reasons to discount evidence from these "other sources." *Dodrill*, 12 F.3d at 919.

The ALJ's first reason for rejecting the statements of Plaintiff's mother, that they mirrored Plaintiff's allegations, is legally sufficient. The Ninth Circuit has found that lay witness testimony which mirrors the claimant's unreliable testimony can be rejected: "Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012). Here, Plaintiff's mother and Plaintiff described severe mental health impairments and migraines. Tr. 77-81, 262, 267-69. The ALJ rejected the severity of the symptoms and limitations described by Plaintiff because she has failed to seek treatment despite having insurance, she has not demonstrated any change since the prior application, and her mood has appeared fine in her two examinations. Tr. 25. As discussed below, the first and the third reasons the ALJ provided for rejecting the severity of symptoms Plaintiff reported were legally sufficient. Therefore, it is also legally sufficient to reject the testimony of Plaintiff's mother to the extent her testimony mirrors that of Plaintiff.

The ALJ's second reason for rejecting the statements of Plaintiff's mother, that her report was inconsistent with Plaintiff's report to the consultative examiner, is legally sufficient. While third party testimony that mirrors the claimant's statements can be rejected for the same reasons the claimant's statements are rejected, third party testimony can also be rejected because it was inconsistent with

the claimant's statements. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Here, the ALJ compared the statement from Plaintiff's mother that Plaintiff's only chore was to clean her room with help and found this inconsistent with Plaintiff's reports to Dr. Pellicer that she was able to do household chores such as washing dishes, grocery shopping, running errands, vacuuming, mopping, making her bed, preparing meals, and laundry. Tr. 25. Plaintiff's mother reported in August of 2014 that "she will clean her room with help from me, she doesn't do any other chores." Tr. 264. However, in October of 2014 Plaintiff reported that her typical day included fixing meals and doing chores. Tr. 322. She stated she was able to: wash dishes, grocery shop, run errands, vacuum, mop, make her bed, prepare meals, and wash the laundry. *Id*. Much like the portions of the testimony that mirror Plaintiff's reported severity, this portion of the testimony, which exceeds the severity Plaintiff reported, renders the testimony unreliable. Therefore, the ALJ's reason is supported by substantial evidence and meets the germane standard. The Court will not disturb the ALJ's treatment of this evidence.

### 4.     Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were unreliable. ECF No. 14 at 17-19.

It is generally the province of the ALJ to determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements concerning the intensity, persistence,

and limiting effects of her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." Tr. 24. Specifically, the ALJ found that (1) Plaintiff's statements were inconsistent with the lack of medical evidence, (2) there was no significant change since the prior ALJ decision in her case, and (3) Plaintiff failed to exhibit maximum effort in her testing. Tr. 25

### A. Medical Evidence

The ALJ's first reason for finding Plaintiff's statements unreliable, that Plaintiff's symptoms were inconsistent with the lack of medical evidence in the record, is specific, clear, and convincing.

Unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication). Here the ALJ found that despite Plaintiff testifying that she had insurance beginning January or February of 2016, Plaintiff failed to seek any treatment. Tr. 25. Additionally, the ALJ found that in October of 2014, she reported that she was getting back on insurance, but there is still no treatment evidence. *Id*. The ALJ also concluded that she failed to appear in to any Emergency Room where she could not be denied treatment due to lack of insurance. *Id*. The ALJ found that "her failure to resume treatment after getting insurance suggests that her symptoms are not as severe as alleged." *Id*.

Plaintiff argues that her failure to seek treatment cannot be held against her because her lack of finical resources prevented her from seeking such treatment and that when she did have medical insurance it too was a barrier to treatment because the locations she sought treatment did not accept her insurance. ECF No. 14 at 18-19. The administrative record does not contain a single piece of treatment evidence. Plaintiff reported to Dr. Pellicer that she was "just getting back on

insurance and would like to get back into counseling and on meds if she can." Tr. 321. Additionally, at the 2016 hearing she testified that she had received medical insurance in January or February of that year, but could not find places that accepted her insurance. Tr. 79-80, 84-85. Yet in her testimony, Plaintiff reported that she had sought and received treatment for impairments other than those alleged in her application since being covered for insurance. Tr. 84. Considering that despite health insurance, Plaintiff failed to seek any treatment for her symptoms, the ALJ's determination is specific, clear and convincing.

### B.    Prior ALJ Decision

The ALJ's second reason, that Plaintiff demonstrated "no significant change since the prior decision and the limited evidence does not reflect disabling mental health impairments," Tr. 25, is not specific, clear and convincing. This finding is in direct conflict with the ALJ's earlier determination that *res judicata* did not apply in this case. Tr. 18.

Under *res judicata*, an ALJ's finding that a claimant is not disabled "create[s] a presumption that [the claimant] continued to be able to work after that date." *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). However, the presumption does not apply if there are "changed circumstances." *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). "Changed circumstances" include such differences as an increase in the severity of impairment, a change in age category, or the existence of a new impairment. *Id.*; *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988).

The ALJ cannot find that *res judicata* does not apply and then reject Plaintiff's symptom statements based on *res judicata*. However, any error resulting from this reason would be considered harmless, because the ALJ provided other legally sufficient reasons to reject Plaintiff's symptom statements. *See Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were

invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

## C. Maximum Effort

The ALJ's third reason for rejecting Plaintiff symptom statements, that she failed to demonstrate maximum effort in her psychological consultative examination with Dr. Gomes, Tr. 25, is specific, clear and convincing. An ALJ may consider a claimant's failure to give maximum or consistent effort during evaluations. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Here, Dr. Gomes stated that throughout his evaluation Plaintiff was distracted by her phone, which she admitted was because she was following a football game. Tr. 314, 316. The ALJ found that the failure to give maximum effort during the testing undermined Plaintiff's statements regarding the severity of her impairments. Tr. 25. This is a specific, clear and convincing reason to reject Plaintiff's symptom statements.

Defendant argues that the ALJ found Plaintiff's statements to be unreliable because they were inconsistent with her reported activities. ECF No. 15 at 11-13. The ALJ did not address Plaintiff's reported daily activities when considering her statements. He only considered these reported activities when addressing the weight assigned to the statements of Plaintiff's mother. Tr. 25. As such, Defendant's assertion is a *post hoc* rationalization, which will not be considered by this Court. *See Orn*, 495 F.3d at 630 (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

1  Accordingly, **IT IS ORDERED:**

2    1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is

3  **GRANTED**.

4    2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

5    The District Court Executive is directed to file this Order and provide a copy

6  to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant**

7  and the file shall be **CLOSED**.

8    DATED February 1, 2019.

9



10           _____

11            JOHN T. RODGERS
       UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION - 18